## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARIO LOPEZ-CONTRERAS,

       Petitioner,

v.                             CASE NO:  8:06-CV-1536-T-30MSS
                                         Criminal. Case No: 8:03-CR-385-T-30MSS

UNITED STATES OF AMERICA,

       Respondent.

_____/

## ORDER

       THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) and the Response of the Government (CV Dkt. #4).  The Court has reviewed the Motion,  the prior proceedings in the underlying criminal case,[1] and the Response of the Government.  After doing so, the Court concludes that this motion should be denied.

## Background

       Petitioner, MARIO LOPEZ-CONTRERAS (hereinafter referred to as "Lopez-Contreras" or "Petitioner") pled guilty without a plea agreement to both counts of the indictment against him.  Count One charged him with conspiracy to possess 500 grams or more of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. §846 and 841(b)(1)(A)(viii) and Count Two charged him with possession of 50 grams or more of

_____

[1] See case number 8:03-cr-385-T-30MSS.

methamphetamine with the intent to distribute, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(B)(viii) and 18 U.S.C. §2.   This Court sentenced him to serve 210 months imprisonment, the bottom of applicable guidelines.

In determining an appropriate sentence, the Court considered facts admitted by Petitioner as follows:

Guilty plea hearing transcript (pp 13-16) (Dkt. #95):

> THE COURT: Now, at this time Mr. Muldrow on behalf of the Government is going to tell the Court what the factual basis is for this charge. Mr. Lopez-Contreras, you need to listen carefully to what he says because when he finishes, I will ask you whether you have any dispute about these facts.
>
> If you have a dispute, you need to let me know now because these facts are important for my purpose in deciding whether to recommend that your plea be accepted, but they can also be used by the District Judge in deciding how your (sic) responsible you are for these offenses and therefore what sort of sentence to impose.  Do you understand that?
>
> MR. LOPEZ-CONTRERAS:        Yes.
>
> THE COURT: Mr. Muldrow?
>
> MR. MULDROW:   Yes, Your Honor.  If the case were to go to trial the United States would prove beyond a reasonable doubt that the Defendant, Mario Lopez-Contreras, is guilty as charged in Counts One and Two of the Indictment.  The evidence would establish that during August of 2003 Mario Lopez-Contreras, his brother Alejandro Lopez-Contreras, their uncle Corina (sic) Lopez-Negrete and others were knowingly and willfully involved in a conspiracy to possess with the intent to distribute over 500 grams of Methamphetamine.
>
> In last August of 2003 a confidential source negotiated with Mario Lopez-Contreras, who is known to the source as Ramon, for the sale of approximately one pound of Methamphetamine to this confidential source.

Mario Lopez-Contreras agreed to meet with the source to sell the pound of Methamphetamine.

On August 26, 2003 Mario and Alejandro Lopez-Contreras, along with Corina Lopez-Contreras -- I'm sorry, that should be Corina Lopez-Negrete, left from Haines City in order to deliver the pound of Methamphetamine to the confidential source.

Corina Lopez-Negrete, this Defendant's uncle, knew that Mario Lopez-Contreras was going to deliver the Methamphetamine to another person and Corina Lopez-Negrete drove the vehicle, a 1993 Toyota Camry, to the drug transaction.

The drug transaction took place in the area of a Burger King restaurant off of Interstate 4 in Plant City. During the drug deal the confidential source approached the Toyota Camry and gave $5,000 to this Defendant, Mario Lopez-Contreras, who in turn gave the confidential source a quantity of Methamphetamine which weighed approximately 498.4 grams gross weight.

The Toyota Camry was later stopped by law enforcement and Corina Lopez-Negrete, Mario and Alejandro Lopez-Contreras were arrested. This Defendant, Mario Lopez-Contreras, had $5,000 drug buy money in his pocket.

Following his arrest Alejandro Lopez-Contreras admitted to being involved with Mario Lopez-Contreras in the distribution of Methamphetamine and that he, Alejandro Lopez-Contreras, was to receive payment from Mario for his participation in the August 26th drug deal with the confidential source.

In addition, Alejandro Lopez-Contreras and Corina Lopez-Negrete gave consent to search a trailer where all three of them, Mario and Alejandro Lopez-Contreras and Corina Lopez-Negrete, lived. That trailer was located at 4061 Alma Avenue, Lot 28 in Haines City, Florida.

Both Alejandro Lopez-Contreras and Corina Lopez-Negrete indicated that additional quantity of Methamphetamine was stored at the location. Law enforcement officers searched the trailer at 4061 Alma Avenue and seized approximately 3,732 grams gross weight of Methamphetamine, approximately $135,665 in U.S. Currency which were proceeds of drug trafficking activities and over two kilograms of a substance, which is used to cut the narcotics.

The United States submits that there is an independent basis in fact for the Court to accept the Defendant's guilty plea this afternoon to Counts One and Two and that is all, Judge.

THE COURT:        And Mr. Muldrow, so that I am clear, the Government has charged this Defendant in Count Two with felony quantity of between 50 and 500 grams, is that right?

MR. MULDROW:   Correct, Your Honor, and that relates to the actual Methamphetamine delivered to the confidential source on August 26, which weighed out at just under 500 grams.

THE COURT:        All right.   Mr. Lopez-Contreras, sir, have you heard the facts as they have been stated by the Government?

MR. LOPEZ-CONTRERAS:        Yes.

THE COURT:        Are those facts true, sir?

MR. LOPEZ-CONTRERAS:        Yes.

Presentence report (paragraphs 7-12, to which Petitioner had no objection at sentencing):

On August 22, 2000, a confidential informant (CI) advised the Drug Enforcement Administration that an individual known as "Ramon," later identified as Mario Lopez-Contreras, was involved in selling methamphetamine. On that date, law enforcement utilized the CI to make a monitored and recorded call to Mario Lopez-Contreras to arrange a methamphetamine transaction. During that conversation, the CI discussed purchasing one pound of methamphetamine and the parties agreed to meet on that same date. However, the meeting did not occur on that date.

On August 26, 2003, the CI again made a monitored and recorded call to Mario Lopez-Contreras to arrange a one pound methamphetamine transaction. Mario Lopez-Contreras agreed to meet the CI on that date at an agreed upon location in Plant City, Florida, to complete the transaction.

Mario Lopez-Contreras arrived at the location with Alejandro Lopez-Contreras and Quirino Lopez-Negrete. The CI along with an undercover detective (UD)

met with the parties, and Mario Lopez-Contreras gave the CI approximately one pound of methamphetamine (449.3 grams) in exchange for $5,000.

After the transaction, law enforcement followed the defendants' vehicle and executed a traffic stop and arrested Mario Lopez-Contreras, Alejandro Lopez-Contreras and Quirino Lopez-Negrete. A subsequent search revealed that Mario Lopez-Contreras possessed the $5,000 drug buy money and a key to the residence. A search of Mario Lopez-Contreras revealed he also possessed a key to the same residence. It was later learned that Mario and Alejandro Lopez-Contreras are brothers and that Quirino Lopez-Negrete is their uncle.

Mario Lopez-Contreras provided a post-arrest statement and claimed that he earned the $5,000 while working as a laborer for a building contractor. Alejandro Lopez-Contreras provided a post-arrest statement and admitted that he and Mario Lopez-Contreras are partners in the distribution of methamphetamine, and that they had been receiving multi-pound quantities of methamphetamine each month from their supplier. He also stated that he expected Mario Lopez-Contreras to pay him for his involvement in this transaction. Alejandro Lopez-Contreras advised that additional quantities of methamphetamine could be found at the residence that the defendants share in Haines City, Florida. Quirino Lopez-Negrete provided a post-arrest statement and admitted that he was involved in the methamphetamine transaction, and that he believed that additional methamphetamine and possibly money could be found at the Haines City residence.

Mario Lopez-Contreras, Alejandro Lopez-Contreras and Quirino Lopez-Negrete consented to a search of the residence located in Fletcher Trailer Park at 4061 Alma Avenue, Lot 2A, in Haines City. Alejandro Lopez-Contreras was present with law enforcement during the search of the residence, and he directed agents to a cabinet and indicated that money was inside. Agents located $135,665 in a kitchen cabinet, which was the proceeds of drug trafficking activities. The search resulted in the seizure of 1,672 grams (1.6 kilograms) of methamphetamine and 1,445 grams (1.4 kilograms) of amphetamine. Laboratory analysis confirmed the net weight of the methamphetamine and amphetamine. A plastic container contained a quantity of d-methamphetamine hydrochloride, or ICE, and laboratory analysis confirmed that it had a net weight of 442.7 grams and was 98% pure. Agents also located 2,122 grams of dimethyl sulfone (MSM) which is used as a cutting agent for methamphetamine to increase the quantity.

Agents further located a Hi Point 9mm handgun and a STAR 9mm handgun,
along with two loaded magazines and a box of 9mm and .380 ammunition.
The weapons and ammunition were inside a gym type bag which was located
in a bedroom in the residence.

## The Motion

Lopez-Contreras raises the following grounds in his §2255 motion:

**Ground One:**        Lopez-Contreras Fifth Amendment due process rights have been
violated because the guidelines, even if advisory, still require proof
beyond a reasonable doubt.

**Ground Two:**        Lopez-Contreras's attorney was ineffective because: (1) he failed to
raise a constitutional objection to the District Court's application of the
sentencing guidelines; (2) failed to raise an objection to the firearm
enhancement; (3) failed to challenge the indictment for failure to allege
all elements; and (4) failed to challenge the evidence obtained as a
result of the illegal search and seizure conducted on the trailer in which
Lopez-Contreras was living.

**Ground Three:**        Illegal search and seizure. The law enforcement officials that searched
the trailer did not have a warrant nor permission to search for anyone
who had legal standing to allow the search.

Each of Petitioner's grounds will be discussed in turn.

## Discussion

**Ground One:**        Lopez-Contreras Fifth Amendment due process rights have been
violated because the guidelines, even if advisory, still require proof
beyond a reasonable doubt.

In support of Ground One, Lopez-Contreras makes a <u>Booker</u>[2] argument. He
acknowledges that <u>Booker</u> does not support his position, but asserts that <u>Booker</u> only

---

[2] <u>United States v. Booker</u>, 543 U.S. 220 (2005).

addressed the Sixth Amendment and he argues that the Fifth Amendment requires all facts to be proven beyond a reasonable doubt to support a sentence under the guidelines.  He cites no legal authority to support this proposition.

In <u>Booker</u>, the U. S. Supreme Court held that it was appropriate for sentencing courts to consult the guidelines in fashioning appropriate sentences as long as the guidelines were advisory.  There is nothing in the Fifth Amendment that would alter this holding.  And, the Eleventh Circuit has held that, if a defendant does not object at sentencing to the facts in a presentence report, a sentencing court may appropriately use those facts to determine an appropriate guideline range for a sentence.  <u>United States v. Shelton</u>, 400 F.3d 1325 (11th Cir. 2005).

Ground One has no merit and will therefore be denied.

**<u>Ground Two:</u>**      Lopez-Contreras's attorney was ineffective because: (1) he failed to raise a constitutional objection to the District Court's application of the sentencing guidelines; (2) failed to raise an objection to the firearm enhancement; (3) failed to challenge the indictment for failure to allege all elements; and (4) failed to challenge the evidence obtained as a result of the illegal search and seizure conducted on the trailer in which Lopez-Contreras was living.

In his motion, Lopez-Contreras does not include an argument in support of Ground Two.  The first three items seem to relate to his <u>Booker</u> argument raised in Ground One.  They are without merit for the reasons stated above as to Ground One.  Counsel is not ineffective for failing to raise meritless arguments.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745 (1983) and <u>United States v. Winfield</u>, 960 F.2d 970 (11th Cir. 1992).

The fourth item asserts that counsel was ineffective for failing to challenge the search and seizure.  The search and seizure was based on the consent to search given by his two co-defendants, both residents, a fact admitted by Petitioner both at his guilty plea hearing and by not objecting to the facts contained in the presentence report.  When appropriate consent to a search is given by a resident, no warrant is necessary.  An attorney is not ineffective for failing to argue a meritless issue.

Therefore, Ground Two will be denied.

**Ground Three:**      Illegal search and seizure.  The law enforcement officials that searched the trailer did not have a warrant nor permission to search for anyone who had legal standing to allow the search.

This ground was not raised on direct appeal and is therefore procedurally defaulted.  It cannot be raised in a §2255 motion.  McCoy v. United States, 266 F. 3d 1245 (11th Cir. 2001).  Petitioner now seeks to avoid that rule by casting this issue in the guise of an ineffective assistance of counsel claim.  That claim is to no avail since, as explained above, Petitioner has admitted that the search was based on valid consent.

This argument is therefore without merit and will be denied.

## Conclusion

For the reasons stated above, it is ORDERED AND ADJUDGED that:

1.      Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) is DENIED.

2.      The Clerk is to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

3.     The Clerk is directed to terminate from pending status the motion to vacate found at Dkt.#106, in the underlying criminal case, case number 8:03-cr-385-T-30MSS.

**DONE** and **ORDERED** in Tampa, Florida on January 11, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2006\06-cv-1536.deny 2255.wpd